**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 25, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

CARLY BLISS, and DALE
TRASK,

        Plaintiffs-Appellants,

    v.

LARRY FRANCO, JON LUND,
and ARCHIE SMITH, in their
individual capacities,

        Defendants-Appellees.

No. 04-2078

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV 03-733 WDS/RLP)**

---

Joe M. Romero, Jr., Albuquerque, New Mexico, for Plaintiffs-Appellants.

Stephen G. French (Valerie A. Chang, with him on the brief), French &
Associates, P.C., Albuquerque, New Mexico, for Defendants-Appellees.

---

Before **EBEL**, **HENRY**, and **McCONNELL**, Circuit Judges.

---

**HENRY**, Circuit Judge.

---

In June 2001, three state probation officers visited the Blanco, New Mexico

residence of Carly Bliss and Dale Trask for a routine probation field inspection of Ms. Bliss. Probation officers Larry Franco, Jon Lund, and Archie Smith thought Ms. Bliss was still on probation, but her probation had actually been discharged more than one month earlier. The inspection resulted in a lengthy search of the residence, along with the arrest of Mr. Trask for obstructing an officer. Ms. Bliss and Mr. Trask brought suit against the probation officers under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act, N.M. Stat. §§ 41-4-1 to 41-4-29. They alleged constitutional violations under the Fourth and Fourteenth Amendments and numerous intentional torts. The district court granted summary judgment to the probation officers on all counts, and denied Ms. Bliss's and Mr. Trask's Rule 56(f) request for additional discovery.

Ms. Bliss and Mr. Trask now challenge the district court's grant of summary judgment and its denial of their Rule 56(f) motion, and we exercise jurisdiction under 28 U.S.C. § 1291. We affirm the denial of the Rule 56(f) motion and the grant of summary judgment to the probation officers as to Ms. Bliss's and Mr. Trask's tort claims under the New Mexico Tort Claims Act. We reverse the grant of qualified immunity to the probation officers with respect to Ms. Bliss's and Mr. Trask's claim of an unreasonable residential search, and we reverse the grant of summary judgment to the probation officers on Mr. Trask's unlawful detention and arrest claims. We remand for further proceedings.

# I. BACKGROUND

In February 2000, Ms. Bliss was convicted of a gun felony in a New Mexico state court. As a result of the conviction, she was placed on probation for eighteen months, from May 8, 2000 until October 31, 2001. Under the probation order, she agreed to "permit any Probation Officer to visit [her] at [her] home . . . at any time" and "to permit a warrantless search" of her home if the officer "has reasonable cause to believe that such a search will produce evidence of a violation of [her] conditions of probation." Aplts' App. at 42 (Order of Probation, dated Aug. 15, 2000). Officer Franco, a Probation Parole Officer for the New Mexico Corrections Department, was assigned to supervise Ms. Bliss's probation.

Around April 24, 2001, Officer Franco prepared an order for Ms. Bliss's discharge, mistakenly believing that her probation would expire on April 30, 2001. He attributes the mistake to a clerical error on the paperwork in Ms. Bliss's probation file. *Id.* at 34 (Mot. for Summ. J., filed Dec. 15, 2003). Officer Franco obtained his supervisor's signature on the proposed discharge order and submitted it to a state judge. "Soon after" Officer Franco submitted the discharge order to the state judge, he realized that Ms. Bliss's probation was actually not set to end until October 31, 2001. *Id.* at 27. He then reviewed Ms. Bliss's probation file,

which did not include a signed discharge order from the judge, and he "assumed that the Court had discovered the mistake and had refused to sign the Order of Discharge." *Id.* Officer Franco did not directly call or otherwise notify the state court that the proposed discharge order was erroneous.

Actually, the judge signed the discharge order and filed it in San Juan County district court on approximately May 11, 2001. For some reason, the district court did not forward a signed copy of the discharge to the Probation Division until July 5, 2001. Officer Franco continued to conduct field inspections at Ms. Bliss's residence–on or about May 25 and June 5, 2001–because he thought she was still on probation. During these inspections, Ms. Bliss did not mention that her probation had been discharged early.

On June 19, 2001, Probation Officers Franco, Lund, and Smith conducted a field inspection at the residence of Ms. Bliss and her boyfriend, Mr. Trask. The probation officers knocked on their door for several minutes. No one answered, but officers saw someone moving inside the home. According to Officer Franco, Ms. Bliss had told him during a previous conversation that she was in an abusive relationship with Mr. Trask. Ms. Bliss, however, denies reporting such abuse or violence. Nonetheless, Officer Franco thought that Ms. Bliss was afraid to open the door because of Mr. Trask, and the probation officers requested assistance from the state police and county sheriff. *See id.* at 28-29 ¶12 ("Based upon

-4-

Bliss'[s] prior accounts of domestic violence issues with Trask, Officer Franco believed that both Bliss and Trask were inside the residence, but that Trask might have been barring Bliss from answering the door. Therefore, the Probation Officers requested police assistance to provide support to the Probation Officers during the field inspection.").

When New Mexico State Police ("NMSP") Officer Frank Smith and a deputy sheriff arrived, Mr. Trask eventually opened the front door. He was wearing at least two knives in sheaths on his belt. NMSP Officer Smith placed Mr. Trask in handcuffs and asked to speak to Ms. Bliss. Mr. Trask said that she was not at the residence. The probation officers and the deputy sheriff searched the residence for approximately one hour because of Officer Franco's concerns for Ms. Bliss's safety. *Id.* at 53. Officer Franco eventually found Ms. Bliss under a bed in the rear bedroom where, according to the officers, Ms. Bliss said Mr. Trask had instructed her to hide. NMSP Officer Smith then arrested Mr. Trask for obstructing an officer. The charge was dropped in July 2001, when officers received a signed copy of the early discharge order for Ms. Bliss.

On June 19, 2003, Ms. Bliss and Mr. Trask filed a complaint under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act against the probation officers. They brought several claims: (1) both alleged an unreasonable search of their residence and an unlawful detention, in violation of the Fourth and

Fourteenth Amendments; (2) Mr. Trask alleged unlawful arrest, in violation of the Fourth and Fourteenth Amendments; and (3) both alleged intentional assault, battery, false imprisonment, and false arrest under state law. Ms. Bliss and Mr. Trask did not name NMSP Officer Frank Smith in the suit. The parties consented to have a magistrate judge preside over the case. *See* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b).

The probation officers filed a motion for summary judgment, and Ms. Bliss and Mr. Trask requested additional discovery pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. In a March 2004 order, the court denied the Rule 56(f) motion and granted qualified immunity to the probation officers with respect to the unreasonable search claims. The court also granted summary judgment to the probation officers on Mr. Trask's unlawful detention and arrest claims, finding no affirmative link between the alleged constitutional deprivations by NMSP Officer Smith and the probation officers' duty to control or supervise him. Finally, the district court granted summary judgment to the probation officers on the state-law tort claims, concluding as a matter of law that the New Mexico Tort Claims Act entitles probation officers to immunity.

The parties and district court are somewhat unclear about which claims were raised and argued below. First, the district court did not believe that Mr. Trask alleged an unreasonable search, but stated that the complaint could be read

that way. Aplts' App. at 102 (Op. and Order, filed Mar. 9, 2004). The parties below and on appeal, however, treat the unreasonable search claim as being raised by *both* Ms. Bliss and Mr. Trask, *see* Aples' Br. at 2, and we will do so as well. Second, the complaint alleges that the probation officers unlawfully detained Ms. Bliss, *see* Aplts' App. at 4-5, but she does not argue that claim below or here, and it is therefore waived and abandoned. *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 559 n.5 (10th Cir. 2001).

Accordingly, we consider the following four issues on appeal: (1) the district court's denial of Ms. Bliss's and Mr. Trask's Rule 56(f) motion for additional discovery; (2) the grant of qualified immunity to the probation officers on the claim of an unreasonable residential search; (3) the grant of summary judgment to the probation officers on Mr. Trask's claims of unlawful detention and arrest; and (4) the grant of summary judgment on the state-law tort claims.

## II. DISCUSSION

A.      Rule 56(f) motion

In January 2004, Ms. Bliss and Mr. Trask filed a response to the probation officers' motion for summary judgment. Their counsel attached to the response an affidavit pursuant to Fed. R. Civ. P. 56(f), arguing that more discovery needed to be done before the court ruled on the motion for summary judgment. The

affidavit asserted that "disputed issues of material fact" existed, and "[t]he information sought by formal discovery would include depositions of the individual defendants, and their supervisor, as well as access to records and procedure manuals or protocols that are under the exclusive control of the Defendants and/or their employer." Aplts' App. at 69-70 (Aff. of Joe M. Romero, Jr.).

The district court denied the Rule 56(f) motion after finding "no specificity in that affidavit or in Plaintiffs' Response stating what discovery would be needed and on what aspect of the summary judgment motion." *Id.* at 101. Ms. Bliss and Mr. Trask now challenge the denial of their request to conduct additional discovery. We review the denial of a Rule 56(f) motion for an abuse of discretion. *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000).

Rule 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit specific facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

A party seeking to defer a ruling on summary judgment under Rule 56(f) must file an affidavit that "explain[s] why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available

and what steps have been taken to obtain these facts." *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) (citation omitted). "[T]he nonmovant must also explain how additional time will enable him to rebut the movant's allegations of no genuine issue of material fact." *Id.* We have noted that a summary judgment movant's exclusive control of information "is a factor favoring relief under Rule 56(f)." *Price*, 232 F.3d at 784.

The Rule 56(f) affidavit of Ms. Bliss and Mr. Trask neither identifies any "probable facts not available," *Campbell*, 962 F.2d at 1522, nor "state[s] with specificity how the additional material will rebut the summary judgment motion," *Ben Ezra, Weinstein & Co. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000). The affidavit does note that certain records and procedures manuals sought for discovery are under the control of the probation officers and their employer, but "[e]xclusive control does not . . . require automatic relief under Rule 56(f)." *Price*, 232 F.3d at 784 (internal quotation marks omitted). Based on the affidavit's lack of specificity, the district court did not abuse its discretion in denying the request for additional discovery.

B.    Unreasonable search claim

Ms. Bliss and Mr. Trask claim that the probation officers unreasonably searched their residence, in violation of the Fourth and Fourteenth Amendments. Both were living in the residence when the nonconsensual search occurred and

had a reasonable expectation of privacy in their home. Thus, Ms. Bliss and Mr. Trask have standing to challenge the residential search and subsequent actions of the probation officers. *See Mancusi v. DeForte*, 392 U.S. 364, 367-68 (1968).

The district court held that the probation officers' actions during the June 19, 2001 inspection were objectively reasonable, and it granted qualified immunity on the unreasonable search claim. The district court concluded:

> [N]either the Defendants nor Plaintiff Bliss had knowledge of the fact that at the time of the search the probation had been terminated. Plaintiffs argue[] that it was unreasonable for Defendant Franco not to have followed up when he discovered that the probation order had been mistakenly prepared and forwarded to the judge. Failing to follow up the judge may have been negligent in May when he discovered that the probation should not have been discharged, but that negligence is not relevant to the Defendants['] conduct in June when the events at issue occurred. At the time of the search a reasonable person, not having seen an order discharging probation, and not having been informed by anyone, including the Plaintiff Bliss, that such an order existed, cannot be said to have violated clearly established rights.

Aplts' App. at 101-02.

The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages arising from claims brought against them in their individual capacities. *McFall v. Bednar*, 407 F.3d 1081, 1087 (10th Cir. 2005). In establishing the defense, the Supreme Court has attempted to balance the protection of civil rights and "the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow v.*

-10-

*Fitzgerald*, 457 U.S. 800, 807 (1982) (internal quotation marks omitted). Individual government actors retain their immunity unless the plaintiff can show that they violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818.

On appeal, we review the award of summary judgment based on qualified immunity de novo, considering all evidence in the light most favorable to the non-moving party. *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001). Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

"To prevail on summary judgment against a defendant who asserts a defense of qualified immunity, a plaintiff must show that (1) the official violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established when the alleged violation occurred." *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 841 (10th Cir. 2005) (internal quotation marks omitted). We first determine "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer,* 536 U.S. 730, 736 (2002). As to the second element, "law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Roska ex rel.*

*Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2003). If the plaintiff satisfies the two-part test, "the defendant bears the usual burden of a party moving for summary judgment to show that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1299 (10th Cir. 2004).

Ms. Bliss and Mr. Trask maintain that the probation officers violated their Fourth Amendment protection against unreasonable searches when the officers conducted a field inspection of their residence more than one month after Ms. Bliss's probation had been discharged. They claim that their Fourth Amendment right to be free from a warrantless entry was clearly established at the time of the June 2001 search. *See Welsh v. Wisconsin*, 466 U.S. 740, 748-49 (1980). The probation officers respond that Ms. Bliss and Mr. Trask only identify an abstract Fourth Amendment right without the appropriate specificity.

Ms. Bliss and Mr. Trask satisfy their burdens under the first two prongs of qualified immunity analysis. Their allegations under the Fourth Amendment, if true, establish a constitutional violation. Moreover, the law regarding a warrantless residential search was clearly established in June 2001. It is true that probationers "do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.'" *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987)

-12-

(quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). Ms. Bliss's probation, however, had already been discharged when the probation officers visited her home in June 2001. Thus, she enjoyed the full protection of the Fourth Amendment, including the clearly established right to be free from warrantless searches of her home. *See, e.g.*, *Coolidge v. New Hampshire*, 403 U.S. 443, 474-75 (1971) ("[A] search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show . . . the presence of 'exigent circumstances.'").

We next consider whether the probation officers can demonstrate "that no material issues of fact remain as to whether [their] actions were objectively reasonable in light of the law and the information [they] possessed at the time." *Hinton v. City of Elwood*, 997 F.2d 774, 779 (10th Cir. 1993) (internal quotation marks omitted). The probation officers acknowledge that their search of the residence was based on the mistaken belief that Ms. Bliss remained on probation. They contend, however, that their mistaken belief was reasonable. As a general rule, "the Fourth Amendment does not invalidate warrantless searches based on a reasonable mistake of fact, as distinguished from a mistake of law." *United States v. Salinas-Cano*, 959 F.2d 861, 865 (10th Cir. 1992) (quoting *United States v. Whitfield*, 939 F.2d 1071, 1073 (D.C. Cir. 1991)).

Here, the officers relied on the Probation Division's failure to receive a

signed copy of the discharge order to infer that the state district court had noticed and refused to sign the erroneous proposed order, thus continuing Ms. Bliss's probation. The parties disagree as to whether that inference was reasonable.

Ms. Bliss and Mr. Trask contend that a reasonable officer would not have assumed that Ms. Bliss remained on probation on June 19, 2001, and instead would have taken more steps to notify the state court that a discharge order had been erroneously submitted. They provide an affidavit of a former probation officer stating that (1) a reasonable probation officer would have known that a non-violent offender's early discharge from probation was not uncommon, and (2) district courts rarely scrutinize proposed orders of discharge. Aplts' App. at 77-78 (Aff. of Tony Herrera). Officer Franco counters that he reasonably assumed the district court judge did not sign the order because a copy had not been forwarded to the Probation Division. According to him, the court generally forwards a copy of the probation order to the Probation Division after a judge signs an order of discharge.

Viewing evidence in the light most favorable to Ms. Bliss and Mr. Trask, we conclude that a material factual dispute exists as to whether the probation officers reasonably believed that Ms. Bliss was still on probation on June 19, 2001. Some evidence and testimony support Ms. Bliss's and Mr. Trask's version of the facts, namely Mr. Herrerra's affidavit stating that (1) a non-violent

-14-

offender may be discharged early from probation, and (2) district courts rarely scrutinize submitted orders of discharge. Also, Ms. Bliss contends that she was told eight months into her probation that she would be considered for early discharge. *Id.* at 83. However, the probation officers have offered evidence to support their contention that they acted reasonably: (1) the district court signed the order of discharge and filed it approximately May 11, 2001, but the court did not forward a signed copy of the order to the Probation Division until July 5, 2001; and (2) Ms. Bliss never told Mr. Franco that her probation had been discharged during field inspections in May and June of 2001.

Moreover, from the record before us, it is unclear how the Probation Division responds when its probation officers discover an error in a proposed discharge order that has been submitted to the district court. If the established practice is to notify immediately the district court of the error, then the probation officers' failure to do so here would support Ms. Bliss's and Mr. Trask's contention that the belief that she was still on probation was not reasonable. On the other hand, if there is evidence that district courts have regularly corrected mistakes in proposed discharge orders sua sponte, then that practice would support the probation officers' contention–that the failure of the Probation Division to promptly receive a signed copy of the discharge order indicated to them that the district court had not signed the order.

Accordingly, we reverse the award of qualified immunity to the probation officers on Ms. Bliss's and Mr. Trask's § 1983 claim of an unlawful residential search. Though the record only indicates Officer Franco's involvement in preparing the erroneous order, we presume communication among the three probation officers and impute Officer Franco's knowledge of Ms. Bliss's procedural history to Officers Lund and Smith. The probation officers stated in their answer to the complaint that all three believed the district judge had caught the discharge error and, during May and June of 2001, "continued to monitor and perform their functions as probation officers." *Id.* at 16 (Answer to Compl., filed Sept. 8, 2003). Further, the three probation officers jointly conducted the inspection, and neither Officer Lund nor Smith contends that he should be treated differently from Officer Franco. *See United States v. Shareef*, 100 F.3d 1491, 1504 (10th Cir. 1996) (recognizing the value in imputing knowledge "among [police] officers working closely together").

C.    Mr. Trask's unlawful detention and arrest claims

The district court granted the probation officers summary judgment on Mr. Trask's § 1983 claims of unlawful detention and arrest. The court found no "affirmative link" between Mr. Trask's alleged constitutional deprivations and the probation officers' "exercise of control" or "failure to supervise" NMSP Officer Smith. Aplts' App. at 102. On appeal, we review de novo the court's grant of

summary judgment on these claims, construing the factual record and reasonable inferences in the light most favorable to Mr. Trask. *DeSpain*, 264 F.3d at 971.

Mr. Trask maintains that the probation officers are responsible for his detention and arrest because (1) they called NMSP Officer Smith to the residence, (2) they falsely represented that they had lawful authority to search the residence, and (3) NMSP Officer Smith arrested and charged Mr. Trask "as a result of the[ir] actions and representations." Aplts' Br. at 23-24. The officers respond that they should not be held liable because they did not personally participate in Mr. Trask's detention or arrest. They note that NMSP Officer Smith decided to detain Mr. Trask for officer safety, and later arrested him for obstructing an officer when it became clear that Mr. Trask had lied about Ms. Bliss's location.

Mr. Trask can survive summary judgment if he presents adequate evidence of the probation officers' liability either in a supervisory or non-supervisory capacity. We agree with the district court that no evidence in the record suggests that the probation officers personally participated in or supervised Mr. Trask's detention and arrest. The absence of supervision, though, does not end our analysis. "Anyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "The requisite causal connection is satisfied if the defendant[s] set in motion a series of events that the defendant[s] knew or reasonably should have known

-17-

would cause others to deprive the plaintiff of [his] constitutional rights." *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990) (quoting *Conner v. Reinhard*, 847 F.2d 384, 397 (7th Cir. 1988)).

Even if a factfinder concludes that the residential search was unlawful, the officers only "would be liable for the harm 'proximately' or 'legally' caused by their tortious conduct." *Bodine v. Warwick*, 72 F.3d 393, 400 (3d Cir. 1995). "They would not, however, necessarily be liable for all of the harm caused in the 'philosophic' or but-for sense by the illegal entry." *Id.* In civil rights cases, a superseding cause, as we traditionally understand it in tort law, relieves a defendant of liability. *See, e.g.*, *Werner v. Orange County Dep't of Prob.*, 115 F.3d 1068, 1071 (2d Cir. 1997); *Springer v. Seaman*, 821 F.2d 871, 877 (1st Cir. 1987), *abrogated on other grounds by Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989).

In *Bodine*, then-Judge Alito outlined a hypothetical scenario relevant here:

Suppose that three police officers go to a suspect's house to execute an arrest warrant and that they improperly enter without knocking and announcing their presence. Once inside, they encounter the suspect, identify themselves, show him the warrant, and tell him that they are placing him under arrest. The suspect, however, breaks away, shoots and kills two of the officers, and is preparing to shoot the third officer when that officer disarms the suspect and in the process injures him. Is the third officer necessarily liable for the harm caused to the suspect on the theory that the illegal entry without knocking and announcing rendered any subsequent use of force unlawful? The obvious answer is "no." The suspect's conduct would constitute a "superseding" cause, *see Restatement (Second) of Torts* § 442 (1965), that would limit the

-18-

officer's liability.  *See id.* § 440.

*Bodine*, 72 F.3d at 400 (other citation omitted).

In assessing "but for" and proximate causes of Mr. Trask's alleged injuries, we can first reasonably infer that Mr. Trask's detention and arrest would not have occurred but for the probation officers' inspection and conduct.  We next determine if they should be legally responsible as a proximate cause of the unlawful detention and arrest that Mr. Trask alleges.  The probation officers' conduct was not the proximate cause of Mr. Trask's alleged injuries if another act intervened and superseded the officer's liability for subsequent events.  *White v. Roper*, 901 F.2d 1501, 1506 (9th Cir. 1990); *see also* Restatement (Second) of Torts § 442 (1965) (outlining important considerations in determining whether an intervening force is a superseding cause).  Another cause of Mr. Trask's alleged unlawful detention was his appearance at the door with knives, which required NMSP Officer Smith to handcuff him for officer safety.  Absent the knives, NMSP Officer Smith would not have handcuffed Mr. Trask immediately.

Whether Mr. Trask's appearance with knives was a superseding act that limited the probation officers' liability depends upon what the probation officers reasonably foresaw when they first called for police backup.  *See White*, 901 F.2d at 1506 (explaining how a prisoner's intervening conduct may supersede a prison official's liability for alleged deliberate indifference, depending on what was

-19-

reasonably foreseeable to the prison official). "Foreseeable intervening forces are within the scope of the original risk, and . . . will not supercede the defendant's responsibility." W. Page Keeton et al., *Prosser and Keeton on Torts* § 44, at 303-04 (5th ed. 1984). Therefore, Mr. Trask's appearance with knives superseded the probation officers' responsibility if the officers, when they called for assistance, did not reasonably foresee detention of Mr. Trask during the search.

Further, if "the reasonable foreseeability of [an intervening act's occurrence] is a factor in determining whether the intervening act relieves the actor from liability for his antecedent [wrongful act], and under the undisputed facts there is room for reasonable difference of opinion as to whether such act was [wrongful] or foreseeable, the question should be left for the jury." Restatement (Second) of Torts § 453 cmt. b (1965). The record on appeal leaves too much unanswered, and it is premature without more evidence to discern what the probation officers reasonably foresaw when they called for backup assistance. A factfinder might reasonably infer after evaluating more evidence that the officers expected to use backup assistance (1) to detain anyone answering the door other than Ms. Bliss while they searched the residence, (2) to have force available in case the search warranted someone's detention, (3) to encourage the residents to open the door, or (4) to assist only in entering the home if no one answered.

As to the unlawful arrest claim, Mr. Trask lied to NMSP Officer Smith and the probation officers when he told them that Ms. Bliss was no longer in the house. While the probation officers' conduct was a but-for cause of the arrest, Mr. Trask's false statement was an additional cause. After more evidence is collected, a factfinder might need to determine whether it was reasonably foreseeable to the probation officers that Mr. Trask would lie or warrant arrest. Even an intervening criminal act is not a superseding act to limit the probation officers' liability if the criminal act was foreseeable. *See id.* § 448.

On remand, either the court or a factfinder must determine how much of Mr. Trask's alleged unlawful detention and arrest were proximately (or legally) caused by the probation officers' conduct. After the record is more developed, the court should handle these questions of proximate cause if the facts are not in dispute and "reasonable persons could not differ about the application to those facts of . . . 'proximate cause.'" Keeton et al., *supra*, § 45, at 321. If reasonable persons could differ, a factfinder should determine the issues of proximate cause. *Id.* Accordingly, we reverse the grant of summary judgment on these claims.

D.    State-law tort claims

The district court also granted summary judgment in the probation officers' favor on Ms. Bliss's and Mr. Trask's state-law tort claims, concluding that the New Mexico Tort Claims Act ("the Act") did not waive the probation officers'

immunity. Ms. Bliss and Mr. Trask appeal, and we review de novo this question of law, *Kaw Nation v. Springer*, 341 F.3d 1186, 1189 (10th Cir. 2003), and the court's grant of summary judgment, *DeSpain*, 264 F.3d at 971.

The Act provides immunity to governmental entities and public employees acting within the scope of their duties unless the conduct fits within a waiver provision. Section 41-4-12 of the Act waives immunity for violations of constitutional rights "caused by law enforcement officers acting within the scope of their duties." N.M. STAT. § 41-4-12. The Act defines a "law enforcement officer" as "a full-time salaried employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes." *Id.* § 41-4-3(D). The New Mexico Court of Appeals has made it clear that probation officers are "not law enforcement officers under Section 41-4-3(D) and therefore the waiver in Section 41-4-12 does not apply to them." *Vigil v. Martinez*, 832 P.2d 405, 412 (N.M. Ct. App. 1992). Accordingly, the probation officers here are protected by the Act's general grant of immunity.

Ms. Bliss and Mr. Trask nonetheless contend that whether the probation officers' principal duties are those of law enforcement officers is a question of fact. They further maintain that the "principal duties" of a probation officer have changed since the appellate court's decision in *Vigil*. We are not persuaded, and

affirm the summary judgment on the state-law tort claims.

## III. CONCLUSION

We AFFIRM the district court's denial of the Rule 56(f) motion and its grant of summary judgment on Ms. Bliss's and Mr. Trask's state-law tort claims. We REVERSE the grant of qualified immunity to the probation officers for the § 1983 claim of an unreasonable residential search. We also REVERSE the grant of summary judgment on Mr. Trask's § 1983 claims of unlawful detention and arrest. We REMAND for further proceedings.