FILED
United States Court of Appeals
Tenth Circuit

November 17, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DOMINGO GOMEZ,

      Plaintiff - Appellant,

v.

BENJAMIN MARTIN,

      Defendant - Appellee,

and

MYRNA GOMEZ; BELLIA
ARMENDARIZ,

      Defendants.

No. 14-2004
(D.C. No. 2:12-CV-01067-GBW-WPL)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **LUCERO**, and **McHUGH**, Circuit Judges.

Domingo Gomez appeals the district court's grant of summary judgment in favor

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

of Benjamin Martin based on qualified immunity and its denial of Mr. Gomez's Rule 56(d) request to depose Martin. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I

On September 26, 2008, Mr. Gomez's then-wife, Myrna Gomez, and her mother, Bellia Armendariz, contacted the Doña Ana County Sheriff's Office to report that Mr. Gomez attempted to poison them. They described falling ill on several occasions after drinking wine offered by Mr. Gomez or taking a vitamin that appeared discolored. Both Ms. Gomez and Armendariz were hospitalized at least once after an alleged poisoning incident. The Sheriff's Office assigned Martin to investigate the case.

Martin reviewed an October 2, 2008 safe-house interview with the Gomez family's two minor children. One, AG, reported overhearing a telephone conversation in which Mr. Gomez discussed poisoning Ms. Gomez, and seeing Mr. Gomez place a small brown pill into a drink he gave to Ms. Gomez. During the same interview, AG made several statements that potentially undermine his credibility. AG claimed that one of Mr. Gomez's friends attempted to lure Ms. Gomez to a fortune teller in Juarez where she was to be murdered.

Martin interviewed Ms. Gomez, who repeated her claims of poisoning and alleged two additional poisoning incidents. She stated that after consuming poisoned wine or vitamins, she suffered respiratory failure, paralysis, and nausea. Ms. Gomez also mentioned that her hair products were discolored. She provided Martin with a bottle of

- 2 -

wine, probiotic vitamins, and hair product to be tested for evidence of poison. When Martin interviewed Ms. Gomez and Armendariz again several months later, they repeated their claims of poisoning.

In April 2009, a private lab found the pesticide carbofuran in the wine Ms. Gomez gave Martin. Martin learned that carbofuran is highly toxic and potentially fatal to humans if ingested, and that it can cause a myriad of symptoms. Martin discovered that Mr. Gomez had access to carbofuran at his workplace. In May 2010, the Food and Drug Administration informed Martin that it found carbofuran in both the wine bottle and vitamins it tested.

Martin also reviewed the medical records from Ms. Gomez's and Armendariz's hospital visits. Those records neither affirmatively listed poisoning as the cause of either woman's illness nor categorically ruled out poisoning.

With the district attorney's support, Martin submitted a criminal complaint against Mr. Gomez on July 27, 2010, alleging that he had attempted to murder Armendariz or Ms. Gomez on five occasions. Mr. Gomez was then arrested and charged with five counts of attempted murder. When Martin submitted an affidavit in support of the arrest, he listed several symptoms of carbofuran poisoning and stated that "[a]ll or most of these symptoms were described by Ms. Armendariz and Ms. Gomez as the exact same symptoms they had felt."

Almost two years later, Deputy District Attorney Jeanne Quintero filed a nolle prosequi on the basis of insufficient evidence. The case against Mr. Gomez was

dismissed without prejudice.  The <u>nolle prosequi</u> noted that Ms. Gomez and Armendariz's medical reports were "not indicative specifically of poisoning;" that there were significant evidence chain problems; that prosecutors learned Ms. Gomez had access to carbofuran; and that Mr. Gomez passed a polygraph examination.  It also stated that Ms. Gomez failed to stay in contact with the District Attorney, missing meetings and infrequently returning phone calls.

Mr. Gomez sued Martin under 42 U.S.C. § 1983, alleging malicious prosecution in violation of his Fourth and Fourteenth Amendment rights, and false arrest and imprisonment in violation of his Fourth Amendment rights.[1]  During discovery, Mr. Gomez attempted to depose Martin, but the deposition was stayed on May 6, 2013, by agreement of the parties.  On June 12, 2013, Martin moved for summary judgment on the basis of qualified immunity.  Mr. Gomez responded with a Federal Rule of Civil Procedure 56(d) motion for leave to depose Martin in order to properly defend against the summary judgment motion.

The district court granted summary judgment in favor of Martin.  It also denied Mr. Gomez's Rule 56(d) motion, concluding that Mr. Gomez had already received sufficient discovery and that further discovery would be fruitless.  Mr. Gomez timely appealed.

---

[1] Mr. Gomez also sued Ms. Gomez and Armendariz for torts stemming from the same investigation and prosecution.  Because Ms. Gomez and Armendariz failed to respond to Mr. Gomez's complaint, defaults were entered against them.

## II

"[W]e review the award of summary judgment based on qualified immunity de novo." Trask v. Franco, 446 F.3d 1036, 1043 (10th Cir. 2006). We view the facts in the light most favorable to Mr. Gomez, the nonmoving party. Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam).

To overcome a qualified immunity defense at the summary judgment stage, a plaintiff must first prove that "the defendant violated a constitutional right." Lundstrom v. Romero, 616 F.3d 1108, 1118 (10th Cir. 2010). "[A]n arrestee's constitutional rights [a]re violated if the arresting officer act[s] in the absence of probable cause that the person had committed a crime." Kaufman v. Higgs, 697 F.3d 1297, 1300 (10th Cir. 2012). To prove false arrest, false imprisonment, and malicious prosecution, a plaintiff "must establish that his arrest and detention were without probable cause." Kerns v. Bader, 663 F.3d 1173, 1187 (10th Cir. 2011); see also Taylor v. Meacham, 82 F.3d 1556, 1561-62 (10th Cir. 1996) (holding that arrest warrants must be supported by probable cause to comply with the Fourth Amendment in malicious prosecution cases). Probable cause is a "common-sensical standard" that is "not reducible to precise definition or quantification." Florida v. Harris, 133 S. Ct. 1050, 1055 (2013) (quotations omitted). Nor does it "require the suspect's guilt to be more likely true than false." Stonecipher v. Valles, 759 F.3d 1134, 1141 (10th Cir. 2014) (quotations omitted). To establish probable cause, an officer must demonstrate "a substantial probability that a crime has been

- 5 -

committed and that a specific individual committed the crime." Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996).

Rather than challenge the facial validity of the arrest warrant, Mr. Gomez argues that Martin omitted several material facts in his affidavit that, if they had been included, would have vitiated probable cause. See United States v. Kennedy, 131 F.3d 1371, 1377 (10th Cir. 1997) (noting that courts may consider whether an affiant makes material omissions that would alter a probable cause determination).

Mr. Gomez specifically alleges four categories of omissions: (1) Ms. Gomez's and Armendariz's hospital records do not mention poisoning and other illnesses could have caused their symptoms; (2) Ms. Gomez appeared disinterested in pursuing her claim against Mr. Gomez; (3) evidence chain issues; and (4) AG was not a credible witness.

We must reject Mr. Gomez's claims that the hospital records would have vitiated probable cause. Although medical professionals failed to explicitly diagnose Ms. Gomez or Armendariz with poisoning and Ms. Gomez and Armendariz were ultimately diagnosed with other illnesses, this information does not negate probable cause. The medical professionals had no reason to suspect that either woman had been poisoned. And they never definitively ruled out carbofuran poisoning as the cause of the women's symptoms. Ms. Gomez and Armendariz did suffer from many of the symptoms of carbofuran poisoning as evinced in their medical records, and they reported even more symptoms of carbofuran poisoning to Martin. He reasonably relied on these reports in his probable cause determination. It is true that the alleged victims did not suffer from all

of the possible symptoms of carbofuran poisoning, and suffered from symptoms that were not indicative of such poisoning. But as the Supreme Court held long ago, probable cause determination "is a practical, nontechnical conception." Brinegar v. United States, 338 U.S. 160, 176 (1949). Probable cause is not vitiated simply because the medical evidence is inconclusive. Further, as the district court concluded, the affidavit was not misleading as the judge reviewing the affidavit could simply compare the list of carbofuran poisoning symptoms to those suffered by the alleged victims.

Mr. Gomez argues that several of Ms. Gomez's actions reflect a broader pattern of indifference to his prosecution. Quintero described as a "problem" the fact that Ms. Gomez "does not stay in contact." She also noted that, during Ms. Gomez's original interaction with the Sheriff's office, after being asked to wait, Ms. Gomez left in order to go to a manicure appointment. And Ms. Gomez also did not report the alleged poisonings for several months. Nevertheless, we cannot agree with Mr. Gomez that if these facts had been included in Martin's affidavit, they would have materially affected the probable cause analysis. "[T]he skepticism and careful scrutiny usually found in cases involving informants . . . is appropriately relaxed if the informant is an identified victim or ordinary citizen witness." Easton v. City of Boulder, 776 F.2d 1441, 1449 (10th Cir. 1985). Martin has offered reasonable explanations for his continued belief in Ms. Gomez's credibility. Moreover, Ms. Gomez's statements were independently

corroborated by the medical records, the carbofuran testing, and AG's statements.[2]

Mr. Gomez also argues that the affidavit's omission of evidence chain issues as to the items that tested positive for carbofuran vitiates probable cause. Specifically, the affidavit does not include the facts that Ms. Gomez had access to carbofuran or that the laboratories were unable to determine when the carbofuran was placed in the wine and vitamins. Although these issues reduced the probative value of the evidence, a probable cause determination is less demanding than "standards such as proof beyond a reasonable doubt or by a preponderance of the evidence." Harris, 133 S. Ct. at 1055. The presence of a deadly pesticide in items intended for human consumption was sufficient for Martin to reasonably conclude that there was "a substantial probability that a crime has been committed." Wolford, 78 F.3d at 489.

Finally, for the first time on appeal, Mr. Gomez argues that Martin's affidavit omitted AG's statements that would have undermined his testimony if included. Because Mr. Gomez failed to present this argument to the district court, it is forfeited. United States v. Abdenbi, 361 F.3d 1282, 1289 (10th Cir. 2004).[3]

---

[2] Nor would a lack of independent corroboration have made Martin's probable cause determination per se unreasonable. See United States v. Patane, 304 F.3d 1013, 1016 (10th Cir. 2002) (rejecting "any suggestion that victims of domestic violence are unreliable witnesses whose testimony cannot establish probable cause absent independent corroboration"), rev'd on other grounds, 542 U.S. 630 (2004).

[3] We note, however, that probable cause would still exist even if the allegedly material omissions had been included in the affidavit. AG's more implausible statements

Continued . . .

- 8 -

None of the alleged omissions, even considered in aggregate, would have vitiated probable cause if they had been included in Martin's affidavit. See United States v. Jurado-Vallejo, 380 F.3d 1235, 1239 (10th Cir. 2004) (noting that totality of circumstances test does not require conclusive proof of any factor to establish probable cause). Because Mr. Gomez fails to show that Martin violated his constitutional rights, there is no need for us to proceed further on the qualified immunity question. See Saucier v. Katz, 533 U.S. 194, 201 (2001) (observing that if the plaintiff fails to show that a constitutional right "would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity").

**III**

We review the district court denial of Mr. Gomez's Rule 56(d) motion for abuse of discretion. World Publ'g Co. v. U.S. Dep't of Justice, 672 F.3d 825, 832 (10th Cir. 2012). Under Rule 56(d), nonmoving parties who need additional discovery to respond to a motion for summary judgment may present an affidavit identifying "the probable facts not available and what steps have been taken to obtain these facts." Trask v. Franco, 446 F.3d 1036, 1042 (10th Cir. 2006). This burden is somewhat elevated in qualified immunity cases because officials have "a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery." Medina v.

---

do not undermine the "solid core" of his account about the alleged poisoning. See Easton, 776 F.2d at 1450.

Cram, 252 F.3d 1124, 1127 (10th Cir. 2001) (quotations omitted). Although an assertion of qualified immunity heightens the Rule 56(d) burden, "limited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity." Crawford-El v. Britton, 523 U.S. 574, 593 n.14 (1998).

Mr. Gomez sought to depose Martin to learn more about the medical and scientific evidence available to him and his assessment of the alleged victims' credibility. The district court denied the motion, concluding that there had already been significant discovery on both issues, including discovery of Martin's entire investigative file, rendering further discovery unnecessary and cumulative. This was not an abuse of discretion. On appeal, Mr. Gomez claims that the additional discovery might have helped prove that Martin knew Ms. Gomez also had access to carbofuran, that carbofuran would have caused more acute symptoms, and that Martin lacked expertise in poisoning and failed to consult an expert. We are skeptical that these facts, even if established, would vitiate probable cause. And in any event, Mr. Gomez fails to articulate why such facts would have been discovered by deposing Martin and why he was not able to ask these questions in the allowed interrogatories and requests for production.

**IV**

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge