FILED
United States Court of Appeals
Tenth Circuit

April 21, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MICHAEL GIBSON,

    Plaintiff - Appellant,

v.

JEFF BROWN, individually, and in his
official capacity as a police officer of the
Aurora Police Department; ERIC L.
WHITE, individually, and in his official
capacity as a police officer of the Aurora
Police Department; AURORA POLICE
DEPARTMENT; CITY OF AURORA,

    Defendants - Appellees.

No. 20-1174
(D.C. No. 1:16-CV-002239-MSK-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

Michael Gibson, pro se,[1] sued Aurora Police Officers Eric L. White and Jeff

Brown for unlawful arrest under 42 U.S.C. § 1983. The district court dismissed the

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

[1] Although we construe a pro se litigant's pleadings liberally, we do not act as
his advocate. *See, e.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

claim against Officer White for failure to state a claim and granted summary judgment for Officer Brown on the grounds of qualified immunity. Mr. Gibson appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. MOTION TO DISMISS/OFFICER WHITE

### A. Background

The following facts were set forth in Mr. Gibson's amended complaint. In the early afternoon of November 18, 2014, Officer White responded to a report from a daycare facility about potential child abuse involving Mr. Gibson's son (the child). Officer White investigated and concluded that marks and scratches reported by a teacher were consistent with the child having been hit with a whip or a belt—in other words, child abuse. In an attempt to identify the perpetrator, Officer White interviewed the child, who shrugged his shoulders when asked how he got the injuries. Officer White also interviewed the child's sister, who told him that she had never seen her brother get hit with a belt.

At about 4:00 p.m., Officer Brown joined Officer White at the daycare; the officers remained together on the scene until Officer White left at about 5:30 p.m. According to Mr. Gibson, when he arrived at 6:00 p.m. to pick up his children, he was met by Officer Brown, who said "he wanted to speak to him concerning child abuse." R., Vol. 2 at 9 (internal quotation marks omitted). When Mr. Gibson refused to answer any questions without an attorney present, Officer Brown allegedly told him he "was under arrest." *Id.* (internal quotation marks omitted).

2

Mr. Gibson further alleged that Officer Brown directed him to an empty office and started to ask him questions, which he again refused to answer. In the meantime, additional officers arrived to assist Officer Brown. Soon thereafter, Mr. Gibson's spouse arrived at the daycare and Officer Brown asked another officer to remain with Mr. Gibson while he questioned his spouse in a separate room. At about 8:00 p.m., Officer Brown returned and issued Mr. Gibson a citation for misdemeanor child abuse. Mr. Gibson alleged that from the time he arrived at the daycare through the time he was issued the citation, Officer Brown affirmatively told him he "was *not* free to leave." *Id.* at 16. Mr. Gibson's theory of recovery was that Officer White's actions caused Officer Brown to arrest him, so he was also responsible for the alleged unlawful arrest.

Officer White moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The district court overruled Mr. Gibson's objection and adopted the magistrate judge's recommendation to dismiss the claim. The court found that Mr. Gibson failed to plead the necessary causation required to state a plausible claim for unlawful arrest against Officer White.[2]

---

[2] Mr. Gibson also asserted claims against Officers White and Brown for malicious prosecution and against the Aurora Police Department and City of Aurora under a theory of municipal liability. Mr. Gibson does not appeal the district court's order dismissing these claims.

## B. Standard of Review

"When deciding whether a complaint states a claim that can survive a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view [them] in the light most favorable to the plaintiff." *Wittner v. Banner Health*, 720 F.3d 770, 774 (10th Cir. 2013) (internal quotation marks omitted). "But the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 775 (internal quotation marks omitted).

## C. Legal Principles

Section 1983 imposes liability on anyone who causes a constitutional deprivation while acting under color of state law. 42 U.S.C. § 1983. Courts employ general tort principles of causation in a case under § 1983 to determine whether the alleged constitutional violation caused a plaintiff's injury. *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012). General tort principles of causation provide that even where the defendant's conduct does not directly cause the plaintiff's injuries, the defendant can still be liable if his conduct was the "proximate cause" of the injury. *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006). Proximate cause exists where the defendant "set in motion a series of events that the defendant[] knew or reasonably should have known would cause others to deprive the plaintiff of his constitutional rights." *Id.* (internal quotation marks omitted).

## D. Analysis

We agree with the district court that Officer White's conduct was not the proximate cause of Mr. Gibson's arrest. There were no allegations that Officer White

had identified Mr. Gibson as the perpetrator or instructed Officer Brown to arrest him. Rather, Mr. Gibson affirmatively alleged that by the time Officer White left the scene and turned the investigation over to Officer Brown, he had not made any determination as to who inflicted the child's injuries. In other words, Officer White neither knew nor reasonably should have known that Officer Brown would arrest Mr. Gibson. Therefore, Mr. Gibson failed to allege a plausible claim for unlawful arrest against Officer White.

## II. SUMMARY JUDGMENT/OFFICER BROWN

### A. Background

The district court found the following undisputed facts regarding the events leading up to Officer Brown's encounter with Mr. Gibson. Officer White was called to the daycare by a teacher who "had notified the police of potential child abuse that she observed while assisting a two-year old boy in the bathroom. [The teacher] noticed red marks above the boy's buttocks that had not been there when she had seen the boy five days prior." R., Vol. 3 at 268-69. Officer White and a sheriff's deputy who was also on the scene tried, without success, to contact the child's parents.

As part of his investigation, Officer White "observed the boy's injuries and questioned him, but the boy mostly shrugged in response." *Id.* at 269. He "also questioned the boy's five-year-old sister," who told him that her father "spanks her when she is in trouble and, one time, used a belt when she could not identify Mars as

5

the fourth planet from the Sun." *Id.* She also told Officer White that she had seen her father spank her brother, but not with a belt.

At some point, Officer Brown arrived at the scene, and "Officer White conveyed the information he had gathered to Officer Brown." *Id.* Officer White eventually left, and "Officer Brown remained to speak with whoever picked up the children." *Id.* Officer Brown met Mr. Gibson when he arrived at about 6:00 p.m.

The parties offered different versions as to what transpired when Mr. Gibson arrived at the daycare. For his part, Officer Brown said that he asked to speak privately with Mr. Gibson about the child-abuse investigation and escorted him into an office. Mr. Gibson, on the other hand, maintained that as soon he arrived at the daycare and refused to answer Officer Brown's questions, he was placed under arrest and told he could not leave while Officer Brown continued to investigate.

The district court found that "[t]he authoritative statement by Officer Brown that Mr. Gibson was under arrest and the directive that Mr. Gibson proceed to a sequestered area for questioning," was sufficient to create a genuine issue of fact whether there was an arrest. *Id.* at 275. Nonetheless, the court found that Officer Brown was entitled to qualified immunity because he had probable cause to arrest Mr. Gibson for violating Colo. Rev. Stat. § 18-6-401(1)(a), which provides in relevant part that "[a] person commits child abuse if such person causes an injury to a child's life or health."

6

## B. Standard of Review

"The defense of qualified immunity protects governmental officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016) (internal quotation marks omitted). "When a defendant asserts the defense of qualified immunity, the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, *and* (2) that the right was clearly established at the time of the challenged conduct." *Id.* (internal quotation marks omitted). "We exercise our sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Donahue v. Wihongi*, 948 F.3d 1177, 1186 (10th Cir. 2020) (brackets and internal quotation marks omitted).

"We review the award of summary judgment based on qualified immunity *de novo*. The movant must show that there is no genuine dispute as to any material fact. In applying this standard, courts view the facts and draw inferences in the light most favorable to the non-movant." *Id.* at 1186-87 (brackets, citations, and internal quotation marks omitted). "The Fourth Amendment question of whether a police officer's observations amounted to . . . probable cause . . . [is a] mixed question[] of law and fact." *Id.* at 1187 (brackets and internal quotation marks omitted). But "where there are no disputed questions of historical fact such as on summary judgment, the court makes the determination of . . . probable cause . . . on its own as a question of law." *Id.* (ellipses and internal quotation marks omitted).

## C. Legal Principles

"A warrantless arrest violates the Fourth Amendment unless it was supported by probable cause." *Holmes*, 830 F.3d at 1138 (internal quotation marks omitted). "Accordingly, when a warrantless arrest is the subject of a § 1983 action, in order to succeed, a plaintiff must prove that the officer(s) lacked probable cause." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008).

"When assessing whether an officer had probable cause to arrest an individual, courts examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Holmes*, 830 F.3d at 1138 (internal quotation marks omitted). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* (internal quotation marks omitted). The arresting officer's knowledge includes "information relayed to [him] by other officers," provided the officer's "reliance upon this information [is] objectively reasonable." *Oliver v. Woods*, 209 F.3d 1179, 1190-91 (10th Cir. 2000).

Because the standard is one of objective reasonableness, "[n]either the officer's subjective beliefs nor information gleaned post-hoc bear on [the probable cause] inquiry. Ultimately, all that matters is whether the officer possessed knowledge of evidence [at the time of the arrest] that would provide probable cause

to arrest the individual on some ground." *Holmes*, 830 F.3d at 1139 (brackets, emphasis, citation, and internal quotation marks omitted).[3]

## D. Analysis

We agree with the district court that Officer Brown had probable cause to arrest Mr. Gibson when he arrived at the daycare. During his investigation, Officer White looked at the injuries to the child and determined that they had been inflicted by a whip or belt. Officer White also interviewed the child's sister, who told him that Mr. Gibson had previously spanked her with a belt and that she had also seen him spank her brother. These facts and circumstances, which Officer White made known to Officer Brown, are sufficient to lead an objectively reasonable officer to believe the child was the victim of child abuse and that Mr. Gibson was the perpetrator.

Mr. Gibson, however, maintains that the information provided by Officer White to Officer Brown raised only a bare suspicion that Mr. Gibson was the perpetrator and did not establish probable cause. *See Storey v. Taylor*, 696 F.3d 987, 992 (10th Cir. 2012) ("Probable cause is established where a substantial probability existed that the suspect committed the crime, requiring something more than a bare suspicion." (internal quotation marks omitted)). But unlike *Storey*, where the officers

---

[3] Officer Brown also presented evidence about what he learned from his interviews with Mr. Gibson and his wife at the daycare, but because this information was obtained after Mr. Gibson was allegedly placed under arrest, it cannot be considered in determining whether there was probable cause for arrest in the first instance. *See Holmes*, 830 F.3d at 1139.

9

arrested the plaintiff based solely on an anonymous call that reported a loud argument at plaintiff's residence, Officer Brown had more than a bare suspicion that Mr. Gibson was the perpetrator; indeed, he knew from Officer White's interview with the child's sister that Mr. Gibson had spanked her with a belt and she had also seen him spank her brother.

We also reject Mr. Gibson's argument that information provided by the child's sister was untrustworthy and should not have been considered in determining whether there was probable cause. In this regard, Mr. Gibson relies on *United State v. Shaw*, 464 F.3d 615, 624 (6th Cir. 2006), in which the court noted that it was "not aware . . . of any situation in which the uncorroborated hearsay statement of a child as young as three, standing alone, has been considered sufficient to establish probable cause." But the facts in Mr. Gibson's case are different because (1) Officer White spoke directly to the child's sister, (2) there is no evidence that she was as young as three-years old, (3) she remembered the precise circumstances that caused Mr. Gibson to spank her with a belt, and (4) her statement was corroborated by the injuries that Officer White observed on the child.

## III. CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Joel M. Carson III
Circuit Judge

10