FILED
United States Court of Appeals
Tenth Circuit

April 22, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

KATHERINE KAUFMAN,

    Plaintiff - Appellant,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,

    Defendant - Appellee.

No. 08-1491
(D. Ct. No. 1:05-CV-02311-WDM-
MEH)

---

**ORDER**

---

This matter is before the court to correct a clerical error in the opinion which issued April 20, 2010. On page 5, in the last two lines of the decision, the original opinion states "an attorney for AFIC ("Mr. Chase") telephoned the district court's law clerk." That clause should read "an attorney for AFIC ("Mr. Chase") telephoned the Magistrate Judge's law clerk." An amended copy of the decision is attached to this order and shall issue nunc pro tunc to April 20, 2010.

Entered for the Court,

*Elisabeth A. Shumaker*

ELISABETH A. SHUMAKER
Clerk of Court

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 20, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KATHARINE KAUFMAN,

Plaintiff - Appellant,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,

Defendant - Appellee.

No. 08-1491

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. Ct. No. 1:05-CV-02311-WDM-MEH)**

---

Steven Silvern (Thomas A. Bulger, with him on the briefs), Silvern Law Offices, P.C., Wheat Ridge, Colorado, appearing for Appellant.

Suzanne Lambdin (Sean A. Chase, with her on the brief), Lambdin & Chaney, LLP, Denver, Colorado, appearing for Appellee.

---

Before **TACHA**, **KELLY**, and **HARTZ**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

The Silvern Law Offices, P.C. and its attorneys Steven Silvern and Jennifer Hicks ("Silvern") appeal from the district court's order imposing sanctions against them for discovery misconduct. Silvern also appeals from the district

court's refusal to order discovery into the extent of ex parte communications between opposing counsel and the court. We have jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Katherine Kaufman was involved in an automobile accident with a driver insured by American Family Insurance Company ("AFIC"). After the accident, an AFIC claims adjuster sent Ms. Kaufman a letter stating:

> While your injury claim includes consideration of necessary and reasonable medical care which is solely related to this accident and based on charges that are usual and customary, payment is not made until you are ready to settle.
>
> . . . .
>
> After you have concluded treatment, we will offer you a lump sum payment. This is inclusive of medical bills, loss [sic] wages and compensation for pain and suffering. The timing of that settlement is up to you. I look forward to being able to help you through a difficult time.

AFIC never, however, paid Ms. Kaufman's claim.

Thereafter, Ms. Kaufman, through Silvern, brought a class action lawsuit under Fed. R. Civ. P. 23(b)(2) against AFIC for breach of contract and fraud.[1] Her proposed class definition consisted of:

> [p]ersons who (1) were involved in a motor vehicle accident with an insured of Defendant; or who purchased uninsured/underinsured motorist coverage from the Defendant and were involved in an

---

[1]The suit was brought in Colorado state court but was removed to federal district court.

-2-

accident with an uninsured or underinsured driver; (2) who received a letter from the Defendant during or after December, 2003 that included promises, representations, and requests for information identical or similar to those in the form letter [received by Ms. Kaufman]; (3) who provided privileged and/or other information to the Defendant, and/or refrained from hiring counsel or timely performing an accident investigation; and (4) whom the Defendant has not compensated or helped as promised.

During discovery, Silvern[2] served interrogatories on AFIC regarding the number of people to whom AFIC sent the form letter and the number of those people AFIC had compensated. AFIC objected to the interrogatories, however, because responding to the requests would require it to review by hand more than 7200 claims files and thus would be unduly burdensome. AFIC also contended that its claims files contained highly sensitive and confidential information. As a result, Silvern filed two motions to compel in which it argued that the discovery requests were relevant to Rule 23(a)(1)'s numerosity requirement[3] and also could help establish AFIC's fraudulent intent. Silvern further suggested that a protective order could address AFIC's concerns regarding confidentiality.

In granting Silvern's motions to compel, the magistrate judge ultimately agreed that the requests were important to ascertain numerosity and to establish

---

[2]Although Ms. Kaufman was at all times the plaintiff in the underlying litigation, we hereinafter refer only to Silvern because its actions, as opposed to Ms. Kaufman's as a party, are at the center of this appeal.

[3]Under Rule 23(a)(1), a district court may not certify a class action unless the plaintiff demonstrates that "the class is so numerous that joinder of all members is impracticable."

the substantive elements of Ms. Kaufman's claims; however, to alleviate the potential burden on AFIC that identifying the relevant documents could cause, the court ordered AFIC simply to make its files available for inspection so that Silvern could complete its own investigation. The magistrate further ordered the parties to stipulate to a protective order that would define Silvern's use of the documents.

The stipulated motion for a protective order, which the magistrate granted, reiterated Silvern's desire to inspect AFIC's claims files in order to establish numerosity. The protective order also provided "[t]hat the documents may not be used for any purpose whatsoever, except for pre-trial preparation and trial of this case and only this case."

While reviewing AFIC's claims files pursuant to the court's discovery order and the resultant protective order, Silvern used contact information contained in the files to telephone approximately thirteen individuals and discuss the class action suit against AFIC with them. Six of the thirteen individuals then retained Silvern as their counsel and signed contingency fee agreements with the law firm. When AFIC learned of these contacts, which it believed violated the protective order and which it considered improper solicitation of clients, it moved for sanctions against Silvern. The district court permitted AFIC and Silvern to depose the claimants who Silvern had contacted and held a hearing on the sanctions motion.

In granting the motion for sanctions, the district court described Silvern's conduct as follows:

> [I]n nearly all cases [Silvern] asked about the claimant's accident and informed the individual of the Plaintiff's pending action. There is evidence that [one attorney] asked if the claimant wanted to participate in the lawsuit and related that [Silvern] could represent the claimant. In some cases, the claimant set up an in-person meeting with [Silvern] and arranged for representation in that meeting. . . . In the case of one claimant, H.L., [Silvern] told H.L. that there could be a statute of limitations problem and suggested that if H.L. did not like her attorney, she could switch to [Silvern]. In a telephone call to another claimant, [Silvern] may have said something along the lines that American Family had no intention of paying on the claimant's accident. Six of the thirteen individuals contacted in this manner retained [Silvern] and signed contingency fee agreements; most testified . . . that before the call from [Silvern], they were not actively pursuing litigation against American Family or had no intent to do so and had no previous relationship with [Silvern].

The district court's sanction order stated that Silvern's contacts with the claimants violated the protective order and were an abuse of discovery. The court ordered Silvern to pay the legal fees and costs incurred by AFIC in preparing its motion for sanctions, which AFIC was to set forth by a later affidavit.

After AFIC submitted its fees and costs but before the court determined the precise amount of the sanction, the parties reached a settlement on the merits of the case and were ordered to file a joint motion to dismiss the lawsuit. Concerned that such a filing might end the litigation and divest the court of jurisdiction over the still-pending sanctions issue, an attorney for AFIC ("Mr. Chase") telephoned the Magistrate Judge's law clerk. In an affidavit, Mr. Chase stated that he simply

wished to inform the court that the parties might file a status report rather than a dismissal in order to ensure the court retained jurisdiction. In an e-mail to Silvern the same day, however, Mr. Chase stated that he had spoken to the law clerk "and it has been suggested that we file a joint status report as opposed to a stipulation to dismiss," which suggests the possibility that he sought advice from the court. Silvern moved for sanctions based on this ex parte communication with the court, which the court granted. The court, however, denied Silvern's request that the court hold discovery regarding the full nature and extent of defense counsel's improper ex parte communications.

On appeal, Silvern contests the sanction order against it and further argues that the district court should have more fully investigated the circumstances of defense counsel's ex parte contact.

## II. DISCUSSION

A.     Sanctions Against Silvern

1.     *Standard of Review*

In ordering sanctions against Silvern, the district court concluded that its contacts with the claimants violated the protective order and constituted an abuse of discovery. The court relied on both its inherent authority to control and supervise the litigation, as well as Fed. R. Civ. P. 37, to issue the sanction. We therefore review the order for abuse of discretion. *See Neiberger v. Fed Ex*

*Ground Package Sys., Inc.*, 566 F.3d 1184, 1192 (10th Cir. 2009) (reviewing Rule 37 sanctions for abuse of discretion); *United States v. Evans & Assoc. Const. Co.*, 839 F.2d 656, 660 (10th Cir. 1988) (reviewing sanction imposed under court's inherent authority for abuse of discretion).[4]

2.      *Propriety of Sanctions*

a.      Interpretation of the Protective Order

Silvern argues that using AFIC's claims files to contact and recruit additional class representatives or class members constitutes "pre-trial preparation and trial of [the] case" and therefore is permitted by the protective order. Silvern's reading of the protective order is unduly narrow and ignores the context in which the order was issued.

From the beginning of the dispute over the discoverability of AFIC's claims files, Silvern consistently and exclusively maintained that it needed the claims files to establish numerosity and to help prove the elements of Ms. Kaufman's substantive claims. Silvern never stated or suggested that it sought to use the files to solicit the claimants' participation in the litigation as class representatives or class members or to secure the claimants as Silvern clients. Indeed, the parties' stipulated motion for a protective order specifically states that

---

[4]Silvern argues for the first time on appeal that the district court did not have authority under either Rule 37 or its inherent power to impose sanctions against it in this case. Because Silvern did not present this argument to the district court, we do not consider it here. *See McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002).

"Plaintiff desires to inspect the documents to determine whether the numerosity component for certifying a class action is present." Silvern did not identify any other reason it needed access to the files. Thus, Silvern's reading of the protective order's limiting language—i.e., that the files only be used for pre-trial preparation and trial of the case—to include client solicitation is unsupportable given Silvern's prior representations to the court.

Silvern's position would essentially require a district court not only to set forth the affirmative scope of a discovery order and any accompanying protective orders, but also expressly to enumerate each and every act prohibited by the orders even when such prohibited acts are obvious from the context of the litigation and the context in which the orders were issued. We have never required a district court to define the scope of its discovery orders with such specificity, and we decline Silvern's invitation to impose that heavy burden on district courts today. Furthermore, as demonstrated by our use of the abuse of discretion standard to review sanctions for discovery violations, we recognize that a district court is in the best position to define the scope of the discovery orders and attendant protective orders it issues. Mindful of our deferential standard of review, we simply cannot read the protective order in the narrow vacuum Silvern advocates. Accordingly, we conclude that the district court did not abuse its discretion in concluding that Silvern's use of AFIC's confidential files to solicit clients violated the protective order and was an abuse of discovery.

b.     First Amendment

Silvern also argues that the sanction violates its and/or Ms. Kaufman's First Amendment right of association and access to the courts. *See* Applt. Br. at 25 ("There is no doubt that Kaufman, with her counsel's assistance, was exercising that fundamental right by seeking additional class representatives in this matter."). To the extent Silvern raises a violation of Ms. Kaufman's First Amendment rights, it does not have standing because Ms. Kaufman is not a party to this appeal. *See Howard v. Mail-Well Envelope Co.*, 150 F.3d 1227, 1230 (10th Cir. 1998) ("Mr. Smith contends that by disqualifying him, the district court deprived the plaintiff of her First and Seventh Amendment rights. However, Mr. Smith has standing to raise only issues which concern his own personal interests; grievances he perceives and attributes to a former client are not properly within the scope of this appeal.").

To the extent Silvern raises a violation of its own First Amendment rights, it is clear that the speech at issue is commercial speech and that the sanction is not an unconstitutional restraint. Silvern, however, contends that its use of AFIC's confidential files to solicit clients constituted core protected speech and that the district court's sanction must therefore withstand strict scrutiny. Indeed, Silvern equates its attempts to solicit class representatives on a contingency fee basis to the conduct of the ACLU attorney in *In re Primus*, 436 U.S. 412 (1978), who offered free legal assistance to pregnant mothers who were being sterilized

as a condition of their continued receipt of Medicaid assistance.

In *In re Primus*, the Supreme Court concluded that the South Carolina State Bar's disciplinary actions against the ACLU attorney, which had been imposed pursuant to a state ethics rule restricting solicitation of clients, violated the attorney's First Amendment rights. 436 U.S. at 439. In reaching this conclusion, the Court emphasized that "[f]or the ACLU . . . 'litigation is not a technique of resolving private differences'; it is 'a form of political expression' and 'political association.'" *Id.* at 428 (quoting *NAACP v. Button*, 371 U.S. 415 (1963)). The Court also emphasized that the attorney "received no compensation for any of the activities in question" and that "neither the ACLU nor any lawyer associated with it would have shared in any monetary recovery by the plaintiffs . . . ." *Id.* at 428–29.

Conversely, on the same day it decided *In re Primus*, the Supreme Court upheld disciplinary actions against an Ohio attorney who engaged in in-person solicitation of business from an accident victim at the victim's hospital bed. *See Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978). In *Ohralik*, the Court concluded that "[i]n-person solicitation by a lawyer of remunerative employment is a business transaction in which speech is an essential but subordinate component." *Id.* at 457. Having concluded that the attorney's solicitation amounted only to commercial speech which enjoys limited First Amendment protection, the Court held that the state could regulate the speech on showing that

it was "likely to pose dangers the state had a right to prevent." *Id.* at 449.

Silvern's attempt to characterize its solicitation of clients as political expression or association is unavailing. In this case, the record demonstrates that Silvern contracted with clients on a contingency fee basis to assist them in resolving private disputes with AFIC. Silvern makes no claim that it was a not-for-profit entity or that it sought only to recoup its costs from clients. Furthermore, the fact that Silvern obtained a number of contingency fee agreements through its communications with AFIC claimants belies its assertion that it was engaged in efforts to vindicate public rights or pursue political ends. Clearly, Silvern sought remunerative employment through its contacts with AFIC claimants. Accordingly, we conclude that Silvern's solicitation of clients in this case constitutes commercial speech similar to that which was constitutionally regulated in *Ohralik*. *See id.* at 459 ("A lawyer's procurement of remunerative employment is a subject only marginally affected with First Amendment concerns.").

"Commercial speech enjoys a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression." *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995) (quotations and alterations omitted). Silvern likens the protective order and the sanctions that resulted from Silvern's violation of it to the order that was

struck down by the Fifth Circuit in *Bernard v. Gulf Oil Co.*, 619 F.2d 459 (5th Cir. 1980). In *Bernard*, the Fifth Circuit held that a broad order in a class action discrimination suit that prohibited plaintiffs' counsel or any plaintiff from having any communication with potential class members or class representatives without first obtaining leave of the court was an impermissible restraint on the attorney's and the plaintiffs' First Amendment rights. *Bernard*, 619 F.2d at 464 n.4, 478. *Bernard* is distinguishable from the instant case in many respects. Most important, the restraint on free speech at issue in *Bernard* was much more intrusive than the protective order and subsequent sanction in this case. In *Bernard*, the court was concerned with an order that it described as "broad in scope and plenary in nature" and which forbade "a wide range of communications." *Id.* at 464. That order stated "any further communication, either direct or indirect, oral or in writing . . . from the named parties, their representatives or counsel to the potential or actual class members not formal parties to this action is forbidden." *Id.* at 464 n.4.

In this case, we are not concerned with an absolute prohibition of communication with potential class members, class representatives, or clients. Rather, the protective order Silvern violated merely defined the scope of Silvern's permitted use of AFIC's confidential files during the discovery process. The court never suggested that Silvern could not, on its own initiative and as a result of its own investigation, locate, interview, and encourage others to join the suit.

-12-

It did, however, prohibit Silvern from employing the court's discovery authority to gain access to its adversary's confidential files and then using those files for its own pecuniary gain. The protection afforded commercial speech by the First Amendment does not prevent district courts from prohibiting and sanctioning such abuses of the discovery process. Accordingly, Silvern's First Amendment claim is without merit.

### c. Due Process

For these same reasons, we reject Silvern's due process argument that it had no notice that its conduct was sanctionable because the protective order arguably permitted recruitment of clients. As we explained, the limiting language of the protective order and the context in which it was issued make clear that the district court was not giving Silvern carte blanche authority to use AFIC's confidential files to telephone, interview, and encourage claimants to join the action against AFIC. Moreover, the First Amendment cases cited by Silvern do not support its position and thus cannot have provided it with a reasonable belief, as Silvern contends, that its actions were permissible. Accordingly, Silvern was provided adequate notice that its use of AFIC's confidential files to solicit clients was sanctionable under the protective order, and therefore its Due Process claim is without merit.

## B. Sanctions Against Mr. Chase

On Silvern's motion to sanction defense counsel for the ex parte

communication, the district court explained that, in essence, the communication was harmless and did not advantage the defense as the court would have retained jurisdiction over the sanctions issue even had the case been dismissed. The court also emphasized that Mr. Chase had not attempted to influence a judicial officer (counsel was, at most, seeking advice) and had informed Silvern of the communication. In a later order, the court stated that nothing in the record indicated that other communications had taken place. Nonetheless, the communication was improper, and the court ordered counsel to pay for Silvern's reasonable fees incurred in making the motion.

On appeal, Silvern argues that the district court erred in refusing to investigate or disclose the details of the ex parte communication between defense counsel and the court's law clerk, and by refusing to investigate whether other ex parte contacts had taken place. To the extent Silvern seeks further investigation of possible ex parte communications regarding the merits of Ms. Kaufman's case, it does not have standing to raise this issue. Any ex parte communications between defense counsel and the court regarding the merits of the litigation would have prejudiced, if anyone, Ms. Kaufman as the litigant and not Silvern as her counsel. Ms. Kaufman has resolved her claims against AFIC, however, and is not a party to this appeal. Thus, Silvern does not have standing to appeal this issue. *See Weeks v. Indep. Sch. Dist. No. I-89*, 230 F.3d 1201, 1213 (10th Cir. 2000) ("Although counsel have standing to appeal orders directly affecting them, they

do not have standing to appeal orders only applicable to their clients.").

To the extent Silvern seeks further disclosure or investigation of other potential ex parte contacts regarding the sanctions against it, its claims are without merit. "We recognize that ex parte communications may be fraught with peril, and that judges must take great care with respect to ex parte communications even in the most exigent of circumstances . . ." *J.B. v. Washington Co.*, 127 F.3d 919, 925–26 (10th Cir. 1997). Generally, the danger posed by an ex parte communication between a litigant and the court is that the court's impartiality may be compromised by the communication itself and the other litigant's inability to refute or clarify the substance of the communication. *See id.* at 926 (concluding that despite the existence of ex parte contacts, nothing in the record suggested that the judge abandoned his impartial judicial role). Mere speculation that an ex parte contact has occurred or that a judge was affected by it, however, does not warrant relief or further investigation. *See West v. Grand Co.*, 967 F.2d 362, 367 (10th Cir. 1992) (denying due process claim because party's "contention that the Commissioners based their decision on ex parte communications [was] pure speculation . . .").

In this case, the single ex parte contact that occurred was promptly disclosed to Silvern. Furthermore, despite the district court's conclusion that the contact was harmless, it nevertheless awarded Silvern reasonable fees because of it. Thus, there is no basis for Silvern's claim that further disclosure or

-15-

investigation of that communication is necessary.

Moreover, Silvern's claim that other similar or even more ominous contacts may have occurred is pure speculation.  Indeed, in its motion for sanctions, Silvern did not identify any other contact it feared may have taken place, suggesting only that the possibility of one improper communication required the court to order full-blown discovery to determine whether any other ex parte communications had occurred.  On such a record, we cannot say that the district court erred in refusing to order such an investigation into the possibility of other ex parte contacts.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court.