FILED
United States Court of Appeals
Tenth Circuit

October 17, 2012

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PHILLIP MARTINEZ; RICARDO
SARMIENTO,

        Plaintiffs–Appellants/
        Cross-Appellees,

    v.

GARY CARSON; DON MANGIN, in
their individual capacities,

        Defendants–Appellees/
        Cross-Appellants.

Nos. 11-2095 & 11-2200

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:08-CV-01046-WJ-LFG)**

---

Paul J. Kennedy (Arne R. Leonard with him on the briefs) of Kennedy & Han, P.C.,
Albuquerque, New Mexico, for Plaintiffs–Appellants/Cross-Appellees.

Lisa Entress Pullen (Anita M. Kelley with her on the briefs) of Civerolo, Gralow, Hill &
Curtis, P.A., Albuquerque, New Mexico, for Defendants–Appellees/Cross-Appellants.

---

Before **LUCERO**, **McKAY,** and **GORSUCH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

In these cross-appeals, the parties raise challenges to various rulings made by the

district court in a § 1983 action arising out of an allegedly unlawful seizure.

The incident underlying this action began when Defendants Gary Carson and Don Mangin, employees of the New Mexico Department of Corrections, observed Plaintiffs Phillip Martinez and Ricardo Sarmiento sitting or standing with a third man in a low-lit area outside an apartment building in a high-crime neighborhood at night. Defendants, who had been patrolling the area as task force members with police officers from the Rio Rancho Department of Public Safety, pulled up to the apartment building in an unmarked police car and turned on the emergency lights. The third man fled into the apartment building when Defendants approached, and Rio Rancho police officer Lieutenant Camacho pursued him. Meanwhile, Defendants forced Plaintiffs to the ground, handcuffed them, drew weapons, and conducted a pat-down search. When additional Rio Rancho officers arrived on the scene a few minutes later, Defendants transferred Plaintiffs, still in handcuffs, into the custody of these officers. The Rio Rancho police officers eventually arrested and booked Plaintiffs, holding Mr. Martinez for twelve hours and Mr. Sarmiento for five hours before their release.

In their § 1983 action, Plaintiffs raised claims of unlawful seizure against several Rio Rancho police officers as well as the named Defendants in this appeal. Defendants moved for summary judgment based on qualified immunity, with a corresponding stay of discovery until the district court resolved the qualified immunity issue. The magistrate judge granted the discovery stay. During the discovery stay, though, Plaintiffs conducted consensual interviews of the Rio Rancho defendants. Defendants argued these interviews were actually depositions held in violation of the stay order, and they therefore submitted

a motion to strike and requested sanctions. The district court agreed Plaintiffs had violated the stay order and thus ordered the interview of Lt. Camacho to be stricken, ordered all motions citing the interview to be denied without prejudice, and ordered Plaintiffs to pay the cost of taking Lt. Camacho's deposition. The Rio Rancho defendants subsequently settled the claims against them and were dismissed from the action.

Defendants filed a third motion for summary judgment and Plaintiffs filed a cross-motion for partial summary judgment. The district court denied both motions, citing multiple factual disputes. The court held that the pertinent question for the jury to decide was whether Defendants had reasonable suspicion of criminal activity when they detained Plaintiffs—if so, the brief seizure was warranted as an investigative detention responsive to officer safety concerns; if not, it was an illegal seizure. The court further held that Defendants could only be held liable for their own allegedly unlawful conduct, not for the actions of the Rio Rancho officers. The district court thereby limited Defendants' liability on Plaintiffs' Fourth Amendment claims to the first few minutes of the seizure.

In pre-trial motions in limine, based on its earlier summary judgment ruling, the district court granted Defendants' motion to exclude (1) evidence of Plaintiffs' arrests, (2) evidence concerning the existence of probable cause for those arrests, and (3) evidence of any events that occurred after Defendants transferred custody of Plaintiffs to the Rio Rancho defendants.

The case then proceeded to trial, where the jury found for Plaintiffs on their unlawful seizure claim, finding Defendants lacked reasonable suspicion to justify the

initial seizure, and awarded Plaintiffs compensatory and punitive damages totaling $5,000 each—$2,500 compensatory and $2,500 punitive. Plaintiffs now appeal the district court's orders limiting Defendants' liability to the first few minutes of the seizure, as well as its earlier discovery sanction. On cross-appeal, Defendants raise issues regarding (1) the district court's denial of summary judgment based on qualified immunity, (2) the district court's denial of their Rule 50(b) motion for judgment as a matter of law, (3) various evidentiary rulings the district court made at trial, and (4) the inclusion of a punitive damages jury instruction.

## DISCUSSION

We begin with Plaintiffs' appellate claims. We first review the district court's holding that Defendants' liability for unlawful seizure under the Fourth Amendment was limited to the first few minutes of the seizure as a matter of law. We review this legal determination de novo. *Wheeler v. Hurdman*, 825 F.2d 257, 260 (10th Cir. 1987).

The question before us is whether Defendants are liable only for the two-to-three-minute period Plaintiffs were in Defendants' custody, or whether Defendants share in responsibility for the entire custodial arrests. Defendants contend they should not be held liable because they did not personally participate in Plaintiffs' arrests. The district court held:

> There is no evidence indicating that Defendants promoted, suggested, or indirectly caused or conspired with any Rio Rancho DPS personnel to violate Plaintiffs' rights. Neither is there any evidence to infer in the slightest that Defendants knew, or should have known, that Plaintiffs would be deprived of their rights by the Rio Rancho DPS officers or Lt. Camacho.

-4-

> Defendants took no part in the decision to further detain or charge Plaintiffs once they transferred them to the custody of the Rio Rancho police officers. . . . Defendants may only be held liable for their own unlawful conduct in this case.

(Appellants' App. at 837.) We disagree with this conclusion.

Section 1983 imposes liability on a government official who "subjects, or causes to be subjected, any citizen . . . . to the deprivation of any rights." 42 U.S.C. § 1983. Thus, "[a]nyone who 'causes' any citizen to be subjected to a constitutional deprivation is also liable." *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006) (internal quotation marks omitted). "The requisite causal connection is satisfied if [Defendants] set in motion a series of events that [Defendants] knew or reasonably should have known would cause others to deprive [Plaintiffs] of [their] constitutional rights." *Id.* (internal quotation marks omitted). Indeed, "[s]ection [1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Monroe v. Pape*, 365 U.S. 167, 187 (1961); *see also McKinley v. City of Mansfield*, 404 F.3d 418, 438-39 (6th Cir. 2005). Thus, Defendants are liable for the harm proximately caused by their conduct. *Trask*, 446 F.3d at 1046. In other words, they may be held liable if the further unlawful detention and arrest would not have occurred but for their conduct and if there were no unforeseeable intervening acts superseding their liability. *Id.* at 1046-47. "That conduct of other people may have concurrently caused the harm does not change the outcome as to [Defendants]." *Lippoldt v. Cole*, 468 F.3d 1204, 1220 (10th Cir. 2006).

We conclude that a reasonable jury could find Defendants' conduct to be the proximate cause of at least some portion of Plaintiffs' prolonged detention following Defendants' transfer of custody to the Rio Rancho officers. The jury found that Defendants had no reasonable suspicion of criminal activity when they forced Plaintiffs to lie on the ground, handcuffed them, and transferred them, still in handcuffs, to the custody of Rio Rancho police officers. We conclude that a reasonable jury could further find this initial illegal detention and transfer of custody was the but-for cause of Plaintiffs' further detention in Rio Rancho custody—a jury could reasonably find that Plaintiffs' arrests and prolonged detentions would not have occurred had Defendants not seized them and transferred them to the custody of Rio Rancho officers. Finally, we conclude that the facts and reasonable inferences to be drawn therefrom could support a jury finding that Defendants knew or should have known their illegal seizure and transfer of custody would result in Plaintiffs' prolonged detention after the transfer of custody. Although Defendants may not have foreseen the full extent of the detention, a jury could certainly find that they foresaw at least some additional period of detention while, for instance, the Rio Rancho officers conducted an investigation into probable cause. The extent to which Defendants can be held liable for the further detention depends upon what they reasonably foresaw when they transferred Plaintiffs to police custody, and we conclude that this question is sufficiently disputed to require resolution by a jury.

We thus reverse the district court's summary judgment conclusion that Defendants could only be liable for the first few minutes of the seizure. On remand, the district court

should conduct a second trial on the limited issue of whether (and to what extent) Defendants should have known their unlawful seizure of Plaintiffs would result in their prolonged detention in Rio Rancho custody and, if so, whether any additional damages are appropriate. *See Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1255-58 (10th Cir. 1999).

We next review the discovery sanction against Plaintiffs. We review a district court's order of discovery sanctions for abuse of discretion. *Kaufman v. Am. Family Mut. Ins.*, 601 F.3d 1088, 1092 (10th Cir. 2010). On June 22, 2009, the magistrate judge issued an order staying all discovery pending a ruling on Defendants' summary judgment motion on qualified immunity. At issue in the magistrate judge's stay order was Plaintiffs' contention that discovery should not be stayed for those other defendants who wanted to continue conducting discovery. Plaintiffs argued that they needed to depose Lieutenant Camacho and the other Rio Rancho officers in order to respond to Defendants' motion for summary judgment. However, the magistrate judge held that all discovery needed to be stayed under the Supreme Court's reasoning in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As the Court explained:

> It is no answer to these concerns to say that discovery for petitions can be deferred while pretrial proceedings continue for other defendants. It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitions and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position. Even if petitioners are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery.

-7-

*Id.* at 685-86. The magistrate judge thus granted the discovery stay, requiring "that *all discovery* in this case be stayed." (Appellants' App. at 93 (emphasis added).) The magistrate judge then stated: "To the extent Plaintiff believes that some discovery is necessary to respond to the pending motion for summary judgment, Plaintiff should proceed in accord with this Court's earlier instructions on Fed. R. Civ. P. 56(f) and the requirements in *Ben Ezra, Weinstein & Co. v. America Online Inc.*, 206 F.3d 980, 987 (10th Cir. [2000])." (*Id.*)

In accordance with this invitation, Plaintiffs filed a motion on June 24 seeking discovery under Rule 56(f). However, without waiting for a response, Plaintiffs proceeded the very next day to conduct consensual "interviews" of Lt. Camacho and the other Rio Rancho defendants. They did not notify Defendants of the interviews, and Defendants were not present. These interviews proceeded essentially like depositions, with the Rio Rancho defendants, in the presence of their attorney, being asked extensive questions under oath by Plaintiffs' counsel. Three days after the interviews, unaware that they had occurred, the magistrate judge granted in part Plaintiffs' June 24 motion for discovery, permitting Plaintiffs to conducted limited depositions of Defendants and Lt. Camacho. However, having already obtained deposition-like evidence from Lt. Camacho, Plaintiffs did not conduct his deposition. Instead, Plaintiffs had the recording of the interviews transcribed by the court reporter, and they relied on this transcript in their response to Defendants' summary judgment motion.

After extensive briefing on the question, the district court concluded that the

interviews violated the discovery stay. The court noted that the "legal ruckus" caused by these interviews "could have been easily avoided by Plaintiffs' counsel waiting all of four days for Judge Garcia's Order allowing limited discovery pursuant to Rule 56(f), and then just deposing Defendant Camacho under Rule 32 within the limits set forth by the Court. Alternatively, Plaintiff's counsel could have prepared a traditional form of an affidavit from the contents of the taped statement." (Appellants' App. at 578.) The district court stressed the fact that the format of the recorded interview "possesses characteristics of a discovery proceeding." (*Id.* at 579.) Counsel did not simply conduct voluntary interviews of the Rio Rancho defendants for investigatory or settlement purposes; rather, counsel conducted a deposition-like proceeding with these defendants, using exhibits and asking extensive questions to obtain evidence against the other defendants whose counsel was not noticed to be present. In light of the magistrate judge's order staying "all discovery" and stating that Plaintiffs would need to proceed under Rule 56(f) to obtain discovery from the Rio Rancho defendants, the district court concluded that "the Stay Order was violated, if not technically, then in spirit." (*Id.*) However, the district court rejected the magistrate judge's recommendation that Defendants be awarded the amount of their attorney fees incurred as a result of the stay violation. Instead, the district court simply ordered the parties to proceed with the Rule 56(f) deposition of Lt. Camacho, with Plaintiffs bearing the costs they would already have expended had they complied with the magistrate judge's order in the first place. The district court also required all parties, including Defendants, to re-file any motions that included citations to the stricken

interview.

We see no abuse of discretion in this minimal discovery sanction. The magistrate judge's stay order clearly stayed "all discovery." Further, he even precisely decided the issue of whether other defendants could continue with discovery in the negative. Plaintiffs submitted a discovery request one day before their interview of the other defendants and four days before the magistrate judge allowed a deposition of Lt. Camacho. With the pending stay on "all discovery," it was not overly burdensome to expect Plaintiffs to wait less than a week to take their requested deposition. Contrary to Plaintiffs' contentions, they did not simply exercise their First Amendment right to participate in settlement discussions. Rather, they obtained deposition-like evidence they then attempted to use precisely like a deposition in their summary judgment pleadings. Under all of the circumstances of this case, we conclude that the district court did not abuse its discretion in holding that Plaintiffs violated the magistrate judge's stay order. We also reject Plaintiffs' due process claim that they did not have notice these interviews were sanctionable. Under all of the circumstances of this case, Plaintiffs were sufficiently put on notice that their actions were impermissible. *See Kaufman*, 601 F.3d at 1094-95.

Turning now to Defendants' cross-appeal, we must first determine the question of our appellate jurisdiction over the cross-appeal. Specifically, we consider Plaintiffs' contention that Defendants' appeal is untimely because it was filed more than thirty days after the district court entered its final judgment.

The district court entered its final amended judgment on May 5, 2011, and

-10-

Defendants filed their first post-judgment motion seeking judgment as a matter of law or a new trial under Fed. R. Civ. P. 50 and 59 on May 6, 2011. On July 6, 2011, the district court denied Defendants' post-judgment motion "without prejudice to re-filing with appropriate citations to the trial transcript." (Appellants' App. at 1085.) Defendants filed an amended post-judgment motion, with citations to the trial transcript, on August 5, 2011. The district court entered an order on September 8, 2011, denying Defendants' post-judgment motion. Defendants filed their notice of appeal on October 6, 2011.

Federal Rule of Appellate Procedure 4(a)(1) requires a notice of appeal be filed within thirty days after entry of judgment in the district court. Filing of a timely motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) or for a new trial under Fed. R. Civ. P. 59 starts the thirty-day time limit after entry of the order disposing of the last post-judgment motion. Fed. R. App. P. 4(a)(4)(A). To be timely under this rule, a motion under Rule 50 or 59 must be filed within twenty-eight days after the entry of judgment. *See* Fed. R. Civ. P. 50(b); Fed. R. Civ. P. 59(b). And, the district court "must not extend the time to act" under these rules. Fed. R. Civ. P. 6(b)(2).

Defendants argue their second post-judgment motion was within the limitations period because the district court dismissed their first motion without prejudice and invited them to re-file their motion. Based on this invitation, Defendants argue, there was no final decision resolving the litigation at the district court level until after they had filed, and the district court had ruled on, their second post-judgment motion. However, we note the district court's order did not set a time frame for Defendants to re-file. Moreover,

-11-

there was no indication that Defendants were in fact going to file a second motion, since

they argued in their first motion that citations to the transcript were not in fact necessary.

In essence, Defendants argue that the dismissal of a party's post-judgment motion without

prejudice, combined with an invitation to file an amended motion, renders the judgment

non-final until some nebulous time in the future when the party may choose to file such

an amended motion.  In light of the strict timeline set forth in the rules of civil procedure,

we cannot accept this proposition.[1]

"A court must not extend the time to act under Rules 50(b) . . . [and] 59(b)," Fed.

R. Civ. P. 6(b)(2), and it may not avoid this rule by dismissing a first post-judgment

motion without prejudice and extending an open-ended invitation for the moving party to

file an amended motion at some unknown point in the future.  *Cf. Watson v. Ward*, 404

F.3d 1230, 1232 (10th Cir. 2005) ("[T]o construe the untimely Rule 59(e) motion as one

made pursuant to Rule 60(b) would be an end-run around Fed. R. App. P. 4(a)(6).").  If

the district court had clearly reserved decision on the merits of the first post-judgment

motion or set a timeline for supplementation, this might be a different case, but under the

---

[1] We have not yet decided whether Rule 59 is a "jurisdictional" or a "claims processing" rule.  *Compare Watson v. Ward*, 404 F.3d 1230 (10th Cir. 2005) *with Gonzalez v. Thaler*, 132 S. Ct. 641 (2012), *and Bowles v. Russell*, 551 U.S. 205, 212 (2007).  Even if these timeliness rules are not jurisdictional, Plaintiffs clearly objected to the timeliness of Defendants' motions early and repeatedly and therefore did not waive their objection.  *See Wilbur v. Robinson*, 480 F.3d 1140, 1147 ("[A] claim-processing rule is nonetheless mandatory and district courts must observe the clear limits of time prescription when they are properly invoked." (internal quotation marks and brackets omitted)).

circumstances of this case we conclude that Defendants' time to file a notice of appeal began to run with the district court's dismissal of their first post-judgment motion. *Compare Fisher v. Kadant, Inc.*, 589 F.3d 505, 511 n.2 ("The district court had the authority to reserve decision on the first motion to reconsider and allow the plaintiffs to supplement it with a proposed amended complaint. . . . Here, however, that is not what the district court did; rather, it denied the motion. . . . The fact that the order specified that the denial of the first motion was 'without prejudice' did not render the second motion timely."), *with Dresdner Bank AG v. M/V Olympia Voyager*, 465 F.3d 1267, 1271 (11th Cir. 2006) (holding an amended post-judgment motion did not affect the timeliness of the original filing where the court had not yet decided the motion). Defendants had thirty days to appeal following the dismissal of their timely post-judgment motion, and their later filing of a second, untimely post-judgment motion does not change the deadline. Because Defendants failed to file a notice of appeal within thirty days following the dismissal of their first post-judgment motion, we must dismiss the cross-appeal for lack of jurisdiction. *See Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011) ("A timely notice of appeal is both mandatory and jurisdictional." (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's sanctions order, **REVERSE** the district court's summary judgment order limiting Defendants' liability, and **REMAND** to the district court for a new trial limited to the issue of whether (and to

-13-

what extent) Defendants reasonably should have known their unlawful seizure of Plaintiffs would result in the prolonged detention and, if so, whether any additional damages are appropriate. Defendants' cross-appeal is **DISMISSED**.